ANNIE T. SULLIVAN, Respondent, v. THE BOARD OF EDUCATION OF THE CITY OF NEW YORK, Appellant.

**New York (city of) — public schools — salaries of teachers.**

There was issued to plaintiff in 1899 an assistant teacher's license to act as a critic teacher in a training school for teachers in the borough of Brooklyn. She was thereafter duly appointed as a critic

teacher in said training school, entered upon and continued to perform her duties up to the time of the commencement of this action. During a period including the year 1912, plaintiff in accordance with the actual duties which she was performing was paid the salary of a model teacher, which salary was that provided for by previous enactments for a " critic " teacher. In 1913 she brought an action based on statutory and schedule provisions (L. 1900, ch. 751) as to the salaries of teachers and demanded judgment for a balance claimed to be due to her under that schedule. In that suit judgment was offered and accepted for practically the amount demanded. In 1902 the board of education adopted a new form of license by which critic teachers were licensed simply and solely as such without any reference to their being assistant teachers. In 1911 said board approved, " subject to the enactment of legislation necessary to put them into effect," new salary schedules covering training schools. The plaintiff complains because commencing with the year 1912 she has been paid under said last schedule as a critic teacher instead of as an assistant teacher. *Held,* that the board of education was not prevented in accordance with all the substantial features and duties of her position from classifying and paying plaintiff as a critic teacher rather than as an assistant one, but that the effect of the former judgment is an adjudication that she is entitled to a recovery of fifty dollars for the year 1913 by reason of the amendment to the charter by chapter 902 of the Laws of 1911.

*Sullivan* v. *Bd. of Education,* 181 App. Div. 477, reversed.

(Submitted October 13, 1919; decided November 18, 1919.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered January 18, 1918, reversing a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term without a jury and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William P. Burr, Corporation Counsel (John F. O'Brien* of counsel), for appellant. Plaintiff's salary, if the schedule of May 24, 1911, was invalid, could be computed according to the terms of the statute with which

that schedule conflicted. (L. 1900, ch. 751, § 4.) Plaintiff was entitled subsequent to January 1, 1912, only to the salary of critic teacher as fixed in the schedule of May 24, 1911, or as fixed in such subsequent higher schedule as might be adopted in pursuance of chapter 902, Laws of 1911. The ratification by legislation cured the previous defects in the schedule. (*People ex rel. Dady* v. *Prendergast*, 144 App. Div. 308; 203 N. Y. 1.)

*James L. Barger* for respondent. While under the Davis law the board of education was authorized to fix the salaries of teachers, that power is subject to the restriction that neither the grade nor pay can be reduced. (L. 1900, ch. 751, § 4; L. 1901, ch. 466, § 1901; *People ex rel. Callahan* v. *Bd. of Education*, 174 N. Y. 169.) The plaintiff was a regular teacher under the classification of the Davis law. (L. 1900, ch. 751.)

HISCOCK, Ch. J. This action was brought mainly to recover a balance claimed by plaintiff to be due her for salary as a teacher in one of the training schools of the city of New York for the years 1912–1914 both inclusive and certain months of the year 1915. The real question is the one whether under the rather complicated statutes and salary schedules of the board of education of that city plaintiff is entitled to salary as an assistant teacher or as a critic teacher during the period in question. There is no dispute about the specific facts in the case, but only about the legal conclusions to be drawn therefrom. The trial court on findings of the various facts decided that the plaintiff was not entitled to any balance. The Appellate Division without disturbing in any way the findings of fact reached a contrary conclusion. With a slight modification we find ourselves in accord with the ultimate conclusion which was reached by the trial court.

At all of the times included within the limits of this controversy there were employed in the training schools

of the city of New York teachers known respectively as assistant teachers, model teachers and critic teachers, the first class sometimes apparently being also designated in salary schedules as " regular " teachers. The duties of these different classes were clearly and substantially differentiated.

In 1899 there was issued to plaintiff " an assistant teacher's license (permanent) to act as a critic teacher in a training school for teachers in the Borough of Brooklyn " and on February 13th of that year she was " duly appointed * * * as a critic teacher in said training school, entered upon and still continues to perform her duties as such." By chapter 751 of the Laws of 1900, taking effect May 3d of that year and commonly known as the " Davis Law " the provisions of the charter of New York city (L. 1897, chap. 378, section 1091) relating to the board of education were so amended as to provide, subject to certain conditions not here necessary to be stated, that in training schools " no female junior or substitute teacher * * * shall receive less than $700 per annum, nor after six years of service as such, less than $1,000 per annum; no female model teacher shall receive less than $1,000 per annum, nor after five years of service as such less than $1,500 per annum; no female regular teacher * * * less than $1,100 per annum, nor after ten years of service as such, less than $1,900 per annum," and the board of education was given power to fix salaries. In 1900 and again in 1902 the board of education adopted salary schedules whereby it provided for women who held the position of " assistant (reg.) teacher " salaries running from $1,100 to $1,900 per annum by a regular increment of $80 per year and for those holding the position of " model teacher " salaries ranging from $1,000 per annum to $1,500 per annum at the end of the fifth year. By paragraphs added to the schedule proper it was provided that " critic teachers shall receive the same salaries as model teachers " and also that " the minimum salary for

a female regular teacher in a training school shall be $1,100 per annum; the maximum salary therefor $1,900; and the rate of annual increase shall be $80."

It will have been noticed that in the statute which has been quoted there is no designation of an " assistant teacher " or of a " critic teacher " and that in the schedules proper to which reference has just been made there is no list of salaries to be paid to critic teachers, but that these salaries are elsewhere fixed by reference to those scheduled to be paid to model teachers.

During the years 1907 to 1912 both inclusive, plaintiff in accordance with the actual duties which she was performing was paid the salary of a model teacher. In 1913 she brought an action based on the statutory and schedule provisions already quoted that " the minimum salary for a female regular teacher in a training .school" should be at least $1,100 per annum and by annual increments of $80 should increase to $1,900 per annum and demanded judgment for a balance claimed to be due to her under those provisions over and above what had been paid to her under the schedule for model teachers. In this suit judgment was offered and accepted for practically the amount demanded.

In 1902 the board of education adopted a new form of license by which critic teachers were licensed simply and solely as such without any reference to their being assistant teachers. May 24th, 1911, said board approved " subject to the enactment of legislation necessary to put them into effect " new salary schedules covering training schools. Under these schedules and subject to certain conditions which it is not necessary to specify assistant teachers were to receive salaries commencing at $1,000 per annum and increasing by increments of $100 per annum for three years and of $150 for nine years until they reached a maximum of $2,750, and critic teachers were to receive an annual salary commencing at a minimum of $1,050 and increasing with an

annual increment of $80 until it reached the maximum of $1,850. Subsequently by a new schedule these last rates of salary were so changed that commencing with the same minimum of $1,050 they reached at the end of the eighth year a maximum of $2,050 per annum.

After the schedule of May, 1911, had been tentatively adopted as aforesaid there was passed a statute taking effect October 30, 1911, whereby section 1091 of the charter of Greater New York covering this subject of salaries was amended so as to provide that: " The salary * * * to which a present member (of the teaching staff in the schools of the City of New York) is entitled under a specific salary schedule now existing shall not be reduced. Beginning with the first day of January, 1912 * * * the salaries * * * of all members shall be not less than those fixed in the schedules and schedule conditions approved by the Board of Education on the * * * 24th day(s) of May, 1911 * * *. A copy of such schedules and schedule conditions * * * certified by the Secretary of the Board, shall, within thirty days hereafter, be filed in the office of the Secretary of State." (L. 1911, ch. 902.)

As stated at the commencement the plaintiff complains because commencing with the year 1912 she has been paid under said last schedule as a critic teacher instead of as an assistant teacher.

Were it not for her former suit we should not find any basis for any recovery by plaintiff. It is true that at the time she was first appointed there had been issued to her an " assistant teacher's license." Not much light is thrown upon the various kinds of certificates or licenses issued by the board of education at that time and it would be mere conjecture to attempt to say why the license which was issued employed those terms. The outstanding facts, however, are that this license was issued to her " to act as a critic teacher " and that she was appointed as such and from February, 1899, to the present time has

continued to discharge the duties of such position. This seems to make a pretty plain case that her position has been and is that of a critic teacher.

Chapter 750, Laws of 1900 (Davis Act), above referred to, did not specifically recognize the position of critic teacher in the training schools. It recognized the position of model teacher, of junior or substitute teacher and of regular teacher. The salary schedules proper fixed salaries for assistant or regular teachers and for model teachers and then attempted to provide that a critic teacher should receive the same as a model teacher. There seems to have been a chance under this statute and these schedules for plaintiff to take the position as between somewhat contradictory provisions that for salary purposes she was a regular teacher and this she did with success and collected pay as such. As we have seen, however, the statutory amendment of 1911, whatever the law may have been before, recognized and validated, as evidenced by the salary schedules in said statute referred to, a classification of teachers for salary purposes as assistant, model and critic teachers and this action must rest upon and be governed by that statute and that classification. Subject to one minor qualification we find nothing which prevented the board of education in accordance with all the substantial features and duties of her position from classifying and paying plaintiff as a critic teacher rather than as an assistant one.

Plaintiff seeks relief in this action for the year 1912. That of course she is not entitled to. Her prior action brought after the present statute had gone into effect asked relief for the year 1912 and the judgment secured by her thereunder is a bar to any further relief for that year even if she were otherwise entitled to it. We think, however, that that former judgment does secure a small benefit to her in this action. That action adjudicated that plaintiff as a regular teacher had reached a point prior to 1911 where she was entitled to a salary of $1,900 under the

schedules then prevailing. For the year 1913 under the schedule adopted in May, 1911, she received a salary of $1,850, or fifty dollars less than the amount mentioned. The statutory amendment of 1911 under which the new salary schedules were adopted provided that: " The salary * * * to which a present member is entitled under a specific salary schedule now existing shall not be reduced." We are inclined to think that this meant the salary schedules in existence before the one of 1911 was adopted. That latter salary schedule was being validated by the statute then being passed and we think that the language of the enactment was not intended to refer to a schedule which would become effective after it was adopted, but rather referred to a schedule in existence down to that time. This view would entitle plaintiff to a recovery of fifty dollars for the year 1913, because after that the schedule which has been applied to her gave her a salary of more than nineteen hundred dollars.

The views which we have expressed sufficiently indicate our opinion that plaintiff is not entitled to any relief under her other prayer for a judgment requiring the board of education to re-rate her on the salary schedules and payrolls.

In accordance with these views the judgment of the Trial Term and order of the Appellate Division should be reversed and judgment directed for plaintiff for the sum of fifty dollars, with interest thereon from January 1, 1914, together with costs in all courts.

CHASE, COLLIN, CARDOZO, POUND, CRANE and ANDREWS, JJ., concur.

Judgment accordingly.